IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JACK STRAUCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:21-CV-378 |
| YELLOW CORPORATION f/k/a YRC WORLDWIDE, INC., | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This matter is before the Court on a motion to compel filed by the plaintiff Jack Strauch. Briefing is now complete, and the Court heard from counsel at a hearing on April 12, 2022. The motion will be granted in part and denied in part.

## BACKGROUND

In April 2021, Mr. Strauch sued defendant Yellow Corporation in the Superior Court of Forsyth County for breach of contract. Doc. 5 at 1, 6. Yellow removed the action to the Middle District of North Carolina based on diversity jurisdiction. Doc. 1. It has since answered and asserted counterclaims, including breach of fiduciary duty/negligence, unfair and deceptive trade practice, constructive fraud, actual fraud, fraudulent inducement, fraudulent misrepresentation, and civil conspiracy. Doc. 9 at 15–19. Yellow contends that Mr. Strauch and Jack Peak, who signed the contract at issue when Mr. Peak was in-house counsel for Yellow, were in league to defraud Yellow. *See,*

*e.g.*, *id.* at ¶ 82. An earlier discovery dispute was resolved by narrowing the scope of a documents subpoena Yellow sent to Mr. Peak, and the Court overruled Mr. Strauch's objections related to privilege and relevance. Doc. 37 at 3–5.

## DISCUSSION

### I.     Meet-and-Confer Certification

When a party files a motion to compel, the movant must meet and confer with opposing counsel and "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The record shows that communication between counsel could have been better before the motion was filed. And the motion filed by Mr. Strauch did not contain the required certification. The Court could deny the motion on those grounds.

But counsel for Mr. Strauch did make an attempt to work out most of the issues before filing the motion to compel, *see, e.g.*, Doc. 39-3, and he did belatedly comply with the certification requirement in the reply brief. *See* Doc. 39 at 2. The Court will, in its discretion, largely resolve the motion on the merits in an effort to move the case along more expeditiously and to prevent the need for more motions practice.

Earlier in this litigation, Mr. Strauch took the position that broad discovery of documents from Mr. Peak was inappropriate, *see* Doc. 22 at 11–12, and Yellow took the opposite position. *See* Doc. 24 at 8. Both parties seem to have changed horses on how wide and deep discovery should be. Moreover, the rhetoric and briefing reflects that counsel could improve their communication with each other. The Court appreciates

2

counsel's recognition of this fact at oral argument, and the Court was also relieved to hear that the briefing overstated the degree of conflict between counsel. Going forward, counsel should temper their language in briefs and avoid any use of words such as "falsely" or "misrepresentation" in connection with the conduct of counsel unless counsel means it. The Court takes accusations of professional misconduct seriously and does not appreciate having its time wasted resulting from their overly casual use. It is one thing in a fraud case to use those words about a litigant's behavior in discussing the facts of the case, but it is an entirely different thing to accuse a lawyer.

## II. O'Connor Retirement

Mr. Strauch asks for documents concerning the retirement of TJ O'Connor, including information about his severance agreement and payments and any obligation to cooperate with Yellow in this litigation. Doc. 34 at ¶¶ 1–2. These documents are responsive to Second Request for Production #10. Doc. 35-8 at 4.

It is undisputed that Mr. O'Connor may be an important witness; he signed the employment contract with Mr. Peak, and there are disputes about whether Mr. Peak had the authority to enter into a contract with Mr. Strauch on behalf of Yellow. Mr. Strauch suspects that Mr. O'Connor did not voluntarily retire and was fired because of the problems that arose from Mr. Peak's dispute with Yellow. Mr. Strauch has submitted some evidence that Mr. O'Connor's departure was not voluntary, *see* Doc. 35-10, so he contends these requested documents may be relevant to Mr. O'Connor's credibility and bias. Doc. 35 at 9. Yellow contends that the documents pertaining to Mr. O'Connor are irrelevant because Mr. O'Connor's retirement had nothing to do with the underlying case,

and any documents pertaining to the retirement are "not likely to lead to the discovery of admissible evidence." Doc. 38 at 6.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery into potential witness bias is appropriate, *see Bockweg v. Anderson*, 117 F.R.D. 563, 565–66 (M.D.N.C. 1987), if it is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

It is reasonable to require Yellow to produce any documents related to Mr. O'Connor's retirement or departure from Yellow that also mention Mr. Peak or Mr. Strauch; potentially those documents are relevant. If there is a written agreement between Mr. O'Connor and Yellow that requires Mr. O'Connor to cooperate with Yellow in this litigation, that agreement must be produced. If there is an agreement with promises by Mr. O'Connor to Yellow related to Mr. Peak or Mr. Strauch, then Yellow should produce it. Otherwise, the request for such documents is overbroad, too tangential, and not likely to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

### III. Peak's Message, Peak Offer Letter, and Missing Parts of Email Threads

The parties agree that the email from Mr. Peak to Mr. O'Connor referenced in the motion to compel has since been produced. Doc. 38 at 6–7, Doc. 39 at 5. They informed the Court at oral argument that the "wordsmithed" version of Peak's offer letter and the specifically-identified parts of email threads referenced in the motion have since been produced. These aspects of the motion to compel are moot.

4

## IV. Emails and Texts About Peak's Job Duties.

Mr. Strauch asks the court to compel production of more emails and texts—about duties Mr. Peak was hired to perform and was performing—between Mr. Peak and 1) Mr. O'Connor, 2) Darren Hawkins, and 3) other employees. Doc. 34 at ¶¶ 5–7. These documents are purportedly responsive to First Request for Production #3. Doc. 35-14 at 4.

Mr. Strauch contends, based on a declaration by Mr. Peak, *see* Doc. 35-1, that Yellow has withheld "many emails and texts," including weekly status emails, texts between Mr. Peak and Mr. O'Connor before Mr. Peak's employment began, and other documents referencing Mr. Peak's duties while employed with Yellow. Doc. 35 at ¶¶ 5–12. Yellow contends it has already provided all non-privileged, responsive documents obtained using its ESI protocol and that all documents it withheld as privileged are listed on its privilege log. Doc. 38 at 8–10.

Mr. Strauch does not appear to be asking for privileged documents, nor does he contend that the ESI protocol used by Yellow was inadequate. He seems to be saying that Yellow has located but not produced all non-privileged, responsive documents.

To the extent Mr. Strauch contends that Yellow must produce all of Mr. Peak's weekly status emails because these show his job duties, the motion is granted to the extent the emails are not privileged. While the request was not specific to those emails, counsel for Mr. Strauch specifically asked for those reports at the meet-and-confer, and those emails seem a reasonable way for Mr. Strauch to obtain evidence as to Mr. Peak's actual job duties as performed, especially given the short time frame at issue.

5

Beyond those specific emails, however, the request to produce did not specifically seek texts and emails with Mr. O'Connor and Mr. Hawkins that only incidentally show job duties. And such a request, had it been made, would be overbroad. While it may be true that one could glean something about Mr. Peak's responsibilities from those texts and emails, it is also a recipe for a fishing expedition. Only emails and texts that specifically discuss Mr. Peak's job duties as such are responsive to this request. Otherwise, the request is not, nor would it be, proportional to the needs of the case.

To the extent Mr. Strauch contends that there are texts and emails that specifically reference job duties that have not been produced, "an informed suspicion that additional non-privileged documents exist . . . cannot alone support an order compelling production of documents." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 252 (M.D.N.C. May 12, 2010); *see also In re Lirazepam & Cloracepate Antitrust Litig.*, 219 F.R.D. 12, 17 (D.D.C. 2003) ("[F]ederal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have. Such suspicion is, however, insufficient to warrant granting a motion to compel.").

To facilitate remaining discovery, and to provide clarity and to avoid future problems, the circumstances here make it appropriate to require Yellow to provide Mr. Strauch with "an affidavit describing the efforts made to locate documents responsive to this request." *See Kinetic Concepts, Inc.*, 268 F.R.D. at 252 (citing *Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123, 125 (D. Md. 2002)) (cleaned up). To the extent Mr. Strauch seeks emails and texts between Mr. Peak and Mr. O'Connor before Mr. Peak began working for Yellow, or emails between Mr. Peak and Mr. Hawkins specifically

discussing his job duties, Yellow shall provide an affidavit stating that all non-privileged documents located using its protocols were produced, if that is the case.

Both parties are advised that documents responsive to discovery requests that are not timely produced during the discovery period are unlikely to be admitted at trial or considered at summary judgment. *See* Fed. R. Civ. P. 37; *Imperial Colliery Co. v. Oxy USA, Inc.*, 912 F.2d 696, 705 (4th Cir. 1990) (affirming the district court's exclusion of evidence where defendant had withheld evidence that plaintiff previously requested until after plaintiff presented its case in chief); *see also S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

As noted *supra* and *infra,* Yellow has no obligation to locate or produce documents that indirectly reflect Mr. Peak's job duties, other than the weekly emails.

To the extent Mr. Strauch contends Yellow should have produced emails between Mr. Peak and other employees such as Mr. Faught or Ms. Meyers, the motion is denied. Mr. Strauch did not object to the ESI protocol that did not contain their names.

## V. Emails Informing Yellow Employees of Peak's Role

Mr. Strauch seeks to compel production of any emails or other documents informing company employees of Mr. Peak's role, authority, or responsibility. Doc. 34 at ¶ 11. Such documents are responsive to First Request for Production #3. Doc. 35-14 at 4. In its brief, Yellow mentions this aspect of the motion in a heading, *see* Doc. 38 at 10, but it has not affirmatively represented that there were no such emails or documents, that any such documents are privileged, or explained why it should not have to produce these documents.

The motion to compel these materials will be granted. If there are none, Yellow shall produce a declaration under oath "describing the efforts made to locate documents responsive to this request" and stating that no such additional documents were found, if that is the case. *See Kinetic Concepts, Inc.*, 268 F.R.D. at 252.

## VI. Draft Offer Letters to the Lawyers Peak Intended to Hire

Mr. Strauch seeks to compel production of draft offer letters Yellow created for the lawyers Mr. Peak intended to hire. Doc. 34 at ¶ 12. Such documents are responsive to First Request for Production #7. Doc. 35-14 at 12.

Yellow contends it conducted its ESI search, which included the names of all the individuals requested, *see* Doc. 39-7 at 3, and that it produced all non-privileged, responsive documents. Doc. 38 at 11. The parties agree that Yellow produced one letter for Sharon Broach. Doc. 35 at 19. Based on the declaration by Mr. Peak, Mr. Strauch believes draft offer letters for other individuals exist. Doc. 35-1 at ¶ 17, Doc. 39 at 12.

The motion to compel these materials will be granted to the following extent: If there are no other responsive documents, Yellow shall produce a declaration under oath "describing the efforts made to locate documents responsive to this request" and stating that no such additional documents were found, if that is the case. *See Kinetic Concepts, Inc.*, 268 F.R.D. at 252. If there are responsive documents, they shall be produced or specifically listed in the privilege log.

## VII. Remaining Items.

Mr. Strauch seeks to compel production of documents indicating that Mr. Peak had litigation and claims settlement authority, that Yellow added Mr. Peak to its

8

professional liability insurance policy and related documents, and Mr. Peak's Outlook calendar with meeting request and acceptance emails. Doc. 34 at ¶¶ 8–10. Yellow contends these documents were not specifically requested. *See* Doc. 38 at 10–11. Mr. Strauch asserts they are encompassed within the request for documents about Mr. Peak's job duties. Doc. 39 at 10–11; *see* Doc. 35-14 at 4.

This aspect of the motion is denied. Yellow had no obligation to interpret the Request to Produce as broadly as Mr. Strauch contends. Under Mr. Strauch's interpretation, Yellow would have to produce virtually every email, text, or document that had Mr. Peak's name anywhere in it, as such a document could arguably show something about Mr. Peak's job duties. Even as narrowed by Mr. Strauch at the meet-and-confer, such discovery is overbroad and not proportional to the needs of the case.

## **CONCLUSION**

Some of the materials Mr. Strauch seeks to compel should be produced. As to some of the materials that Yellow says do not exist or have all been produced, declarations will be required. Otherwise, the motion to compel asserts an overbroad and unreasonable reading of the requests to produce or seeks tangential information not proportional to the needs of the case.

It is **ORDERED** that the plaintiff's motion to compel, Doc. 34, is **GRANTED** in part and **DENIED** in part as follows:

1. No later than April 21, 2022, Yellow shall produce:

    a. T.J. O'Connor's retirement documents that mention Mr. Peak or Mr. Strauch;

9

b. any agreement to cooperate in this litigation between Mr. O'Connor and Yellow;

   c. any agreement with promises by Mr. O'Connor related to Mr. Peak or Mr. Strauch;

   d. any emails or announcements Yellow sent informing its employees of Mr. Peak's authority or job duties; and

   e. the weekly status emails from Mr. Peak to Mr. O'Connor, if not privileged.

   Any documents Yellow contends are privileged must be identified in a privilege log.

2. No later than April 18, Yellow shall produce a declaration under oath stating that all non-privileged emails and texts between Mr. Peak and Mr. O'Connor specifically discussing Mr. Peak's job duties before Mr. Peak began working for Yellow, all emails between Mr. Peak and Mr. Hawkins specifically discussing Mr. Peak's job duties, and all draft offer letters to lawyers Mr. Peak intended to hire, have been produced and describing the efforts made to locate the documents.

3. The motion is otherwise **DENIED.**

This the 14th day of April, 2022.

_____
UNITED STATES DISTRICT JUDGE

10